IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| JOHN C. COLEMAN,<br><br>                    Petitioner,<br><br>        vs.<br><br>WARDEN TIM MCCONAHAY,<br><br>                    Respondent. | CASE NO. 5:21-cv-01985-CEF<br><br>DISTRICT JUDGE<br>CHARLES ESQUE FLEMING<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT &<br>RECOMMENDATION** |

John C. Coleman filed a Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Coleman is currently in custody at the Mansfield Correctional Institution serving an eight-year sentence imposed by the Summit County Court of Common Pleas in State v. Coleman, Case No. CR-2018-01-0287. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court dismiss Coleman's petition.

## Summary of underlying facts

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Ninth Appellate District summarized the facts underlying Coleman's conviction as follows:

> {¶2} Mr. Coleman was arrested on burglary charges on January 26, 2018. On February 14, 2018, the Summit County Grand Jury indicted Mr. Coleman on two counts of burglary in violation of R.C. 2911.12(A)(2), both felonies of the second degree. One charge stemmed from a July 28, 2017 incident, and the other from a September 25, 2017 incident.
>
> {¶3} Mr. Coleman entered a plea of not guilty as to both charges, and the case proceeded through the pretrial process. Following a jury trial on March 5, 2019, the trial court convicted Mr. Coleman on both counts and sentenced him according to law.

*State v. Coleman*, 2020-Ohio-2807, 2020 WL 2188847, at *1 (Ohio Ct. App. 2020).

### Procedural background

*Trial court proceedings.* During months between his arraignment and trial, Coleman filed numerous motions, which are discussed below. *See Coleman*, 2020 WL 2188847, at *2–4; Doc. 19-1, at 11–66. Coleman's case eventually proceeded to trial and in March 2019, the jury found Coleman guilty of both burglary counts alleged in Coleman's indictment. Doc. 19-1, at 67. The trial court sentenced Coleman on March 12, 2019, to consecutive four-year terms of imprisonment, for an aggregate eight-year sentence. *Id*. at 68.

*Direct Appeal*. On April 8, 2019, Coleman, through counsel, filed a timely notice of appeal. Doc. 19-1, at 70. In a brief in support of his appeal, Coleman raised a single assignment of error:

2

> Appellant Coleman was tried, convicted, and sentenced on two counts of burglary, R.C.2911.12(A)(2), in violation of his constitutional and statutory rights to a speedy trial.

*Id*. at 73. On May 6, 2020, the Ohio court of appeals overruled Coleman's assignment of error and affirmed the trial court's judgment. *See Coleman*, 2020 WL 2188847, at *4.

Coleman filed a pro se notice of appeal with the Supreme Court of Ohio on June 9, 2020. Doc. 19-1, at 111–12. In his memorandum in support of jurisdiction, he raised one proposition of law:

> Appellant Coleman was tried, convicted, and sentenced on two counts of burglary, R.C.2911.12(A)(2), in violation of his constitutional and statutory rights to a speedy trial.

*Id*. at 124. On August 4, 2020, the Ohio Supreme Court declined under its rule of practice 7.08(B)(4) to accept jurisdiction of Coleman's appeal. *Id*. at 188; *State v. Coleman*, 150 N.E.3d 115 (Table).

The record contains no indication that Coleman sought review in the United States Supreme Court. His 90-day window for seeking review in that Court expired on November 2, 2020.

*Ohio Appellate Rule 26(B) Application to reopen.* Meanwhile, in July 2020, Coleman filed in the Ohio court of appeals a pro se application under Ohio Appellate Rule 26(B) to reopen his direct appeal due to ineffective

assistance of appellate counsel.[1] Doc. 19-1, at 189. Coleman asserted seven

assignments of error:

> 1. The trial court erred in denying appellant's motion for acquittal when the State failed to present sufficient evidence of burglary.

> 2. Appellate counsel did not argue the manifest weight of evidence on appeal, he violated the essential duty to defendant by failing to argue sufficiency of the evidence, defendant was prejudiced by the absence of an assignment of error asserting insufficiency of the evidence.

> 3. Appellate counsel did not argue the trial judge erred by not instructing the jury on a lesser included offense.

> 4. Appellant counsel was ineffective for not challenging the consecutive nature of Appellant's sentence.

> 5. Appellant Counsel was ineffective for failing to develop an argument supporting his claim that Appellant's constitutional rights to a speedy trial were violated.

> 6. Appellant was prejudice when his trial counsel failed to assert Appellant's statutory speedy trial rights.

---

[1]     Rule 26(B)(1) provides:

> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment unless the applicant shows good cause for filing at a later time.

> 7. Appellate Counsel failed to submit the transcripts for the dates: Nov. 2, 2018, suppression hearing, Nov. 28, 2018, Attorney withdrew, Jan. 23, 2019, requested for transcripts to prepare for motion to discharge, Feb. 19, 2019, the State requested continuance of trial until March 5, 2019.[2]

Doc. 189–200.

The Ohio appellate court denied Coleman's application in November 2020. Doc. 19-1, at 204–11. In its decision the appellate court explained that it would "discuss each proposed assignment of error to the extent [that] it contains a cognizable argument as to the allegedly deficient performance of appellate counsel." *Id*. at 206.

As to all but Coleman's fifth assignment of error, the court held that Coleman had "not made a meaningful attempt to develop support for his claims that appellate counsel's performance was deficient." *Id*. at 209. As to Coleman's first assignment of error, the court concluded that Coleman essentially argued that the state failed to present certain evidence or prove the elements of his offenses. *Id*. at 206. But these assertions didn't show that appellate counsel was ineffective. *Id*.

As to Coleman's second assignment of error, the court held that he failed to "identif[y] an argument, regarding either the manifest weight or sufficiency of the evidence, that appellate counsel failed to raise." *Id*. at 207. Although Coleman's third assignment of error concerned the trial court's failure to give

---

[2] In this report and recommendation, I've reproduced Coleman's assignments of error and grounds for relief as written.

5

an instruction about the lesser-included offense of criminal trespass, Coleman hadn't shown that the facts would support such an instruction or that he requested the instruction at trial. *Id*. So he hadn't shown that appellate counsel was ineffective. *Id*.

The court determined that Coleman had "not presented any relevant argument to support his bald assertion" in his fourth assignment of error "that appellate counsel was deficient for failing to raise an issue regarding [Coleman's] consecutive sentences." *Id*. at 207–08. And in Coleman's sixth assignment of error, Coleman had "not explained in what way he believe[d] trial counsel failed to preserve his speedy trial rights or how he was prejudiced by the alleged failure, nor has he shown that appellate counsel was deficient in his performance for failing to raise an argument on appeal regarding this issue." *Id*. at 208.

With respect to Coleman's seventh assignment of error, concerning counsel's alleged failure to submit certain transcripts, the court remarked that "the failure to include transcripts was not the basis on which" the court of appeals "overruled [Coleman's] assignment of error in [his] direct appeal." *Id*. Further, the "the trial court granted appellate counsel's request for the court reporter to prepare and file a transcript including all in-court proceedings from an arraignment through sentencing." *Id*. So "[i]t [was] unclear why [Coleman] believe[d] [that] certain transcripts [were] missing from the record or how he might have been prejudiced by their omission, and," in any event, Coleman had

6

"not demonstrated that appellate counsel failed to include any necessary transcripts in the record." *Id*. at 208–09.

As to Coleman's fifth assignment of error, that counsel "was ineffective for failing to develop an argument supporting his" speedy trial claim, the court of appeals referenced its previous decision on the issue. Doc. 19-1, at 210. The court observed that although counsel's performance might have been deficient, Coleman hadn't shown "that there was any meritorious argument to have been made." *Id*. So Coleman had "failed to demonstrate a reasonable probability of success on this assignment of error." *Id*.

Coleman did not appeal to the Ohio Supreme Court the appellate court's denial of his application. Under Ohio Supreme Court rule of practice 7.01(A)(1)(a)(i), Coleman's time to appeal expired in early January 2021.

*Other filings.* Coleman filed a number of other motions and petitions, including a pro se petition to vacate or set aside judgment of conviction or sentence. *See* Doc. 19-1, at 212–18, 220–22, 230–32, 237–38, 247–48, 256–64, 266–70. The trial court denied all of these motions. *See id*. at 229, 236, 254, 275. Coleman did not appeal any of these decisions.

*Federal habeas corpus petition.* In October 2021, Coleman filed a federal habeas corpus petition under 28 U.S.C. § 2254. Doc. 1. He initially raised five grounds for relief. *Id*. at 5–17. The Court later docketed Coleman's "amended" claims. Doc. 24. In a September 2022 order, this Court held that Coleman's amended claims were timely filed but lacked required supporting facts. Doc.

58, at 6. The Court granted Coleman 30 days to remedy the deficiency in his filing. *Id*.

The Court docketed Coleman's amended petition in February 2023. Doc. 93. But because Coleman invoked the prison mailbox rule, *see* Doc. 93, at 15, his amended petition is deemed filed within 30 days of the Court's September 2022 order. So the amended petition is timely filed.[3]

In Coleman's amended petition, he raises the following grounds for relief:

> **Ground One**: Constitutional right to a speedy trial was violated under the Sixth and Fourteenth Amendment to the United States Constitution.
>
> **Ground Two**: Insufficient evidence to support elements of both counts of burglary 2911.12(A)(2) in violation of the Fourteenth Amendment of the U.S. Constitution.
>
> **Ground Three**: Ineffective Assistance of Counsel in violation of the Sixth Amendment under the United States Constitution.
>
> **Ground Four**: Brady Violation in violation of the Fourteenth Amendment under the U.S. Constitution.

Doc. 93, at 5–10. The Warden filed a return in response to Coleman's initial petition, Doc. 19, and a response to the amended petition, Doc. 103. Coleman filed a motion to strike the Warden's initial response, Doc. 23, but did not

---

[3]    Although the Warden doubts that Coleman placed his filing in his prison's mailing system on the date Coleman asserted, Doc. 103, at 2–3, the Warden offers little, beyond his suspicions, to support his assertion that Coleman didn't timely file his amended petition.

otherwise file a traverse. Coleman filed a "reply to Respondent's response to amended habeas petition." Doc. 109.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, § 104, 110 Stat. 1214 ("AEDPA" or the 1996 Act), habeas petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available *at the time of* the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available "because [a petitioner] failed to use them within the required time period, procedural default and not exhaustion bars federal court review." *Id.*

*Exhaustion.* A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims "must 'fairly present' his claim[s] in each appropriate state court (including a

9

state supreme court with powers of discretionary review)," as a predicate to raising them in a federal habeas petition. *Woolbright v. Crews*, 791 F.3d 628, 631 (6th Cir. 2015). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the petitioner must present the claims to the state courts as federal constitutional issues and not just as issues arising under state law. *See, e.g.*, *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987); *Prather v. Rees*, 822 F.2d 1418, 1421 (6th Cir. 1987).

*Procedural default.* Procedural default may occur in two ways. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). First, a petitioner procedurally defaults a claim by failing "to comply with state procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) whether there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) whether the state court enforced the procedural rule; (3) whether the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional

10

claim; and (4) whether the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (quoting *O'Sullivan*, 526 U.S. at 848); *see Woolbright*, 791 F.3d at 631 ("When a petitioner has failed to fairly present his claims to the state courts and no state remedy remains, his claims are considered to be procedurally defaulted."). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v. Thompson*, 501 U.S. 722, 732 (1991), a petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, a petitioner must show cause for the default and establish actual prejudice resulted from the alleged violation of

federal law, or show that a fundamental miscarriage of justice will result if the petitioner's claims are not considered. *Coleman*, 501 U.S. at 750.

## Discussion

*Coleman has procedurally defaulted all of his grounds for relief.*

1. *Coleman's speedy trial claim*

A habeas court "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729. This rule "appl[ies] to federal claims that have been procedurally defaulted in state court." *Id*. at 731. A state procedural rule that is enforced by the state's courts and which operates "to bar appellate consideration of an objection" "is adequate" to support the state court's judgment. *See Engle v. Isaac*, 456 U.S. 107, 125 (1982); *see also Smith v. Eppinger*, No. 21-3366, 2022 WL 13892512, at *2 (6th Cir. May 6, 2022) (a "rule is … adequate" if "it is firmly established and regularly followed"). And a ruling "based solely on [state] procedural grounds" is "independent of federal law." *Coleman*, 501 U.S. at 744; *see Smith*, 2022 WL 13892512, at *2 (a rule is independent if "it does not rely on federal law").

Coleman's first ground for relief is a Sixth Amendment speedy trial claim.[4] He adverted to a speedy-trial claim in the brief he filed on direct appeal

---

[4] To the extent Coleman claims that the State violated Ohio's speedy trial statute, his claim is not cognizable in a petition under Section 2254.

with the Ohio court of appeals. Doc. 19-1, at 75–76. When confronted with Coleman's argument, the court first set out the facts and then explained:

> {¶19} …. Mr. Coleman has not articulated a clear basis for his assigned error, nor identified legal or factual disputes, nor has he developed an argument to support his contention that his constitutional or statutory rights to a speedy trial were violated. See App. R. 16(A)(7). This Court will not "guess at undeveloped claims on appeal" or construct arguments to support an assignment of error. McPherson v. Goodyear Tire & Rubber Co., 9th Dist. Summit No. 21499, 2003-Ohio-7190, ¶ 31, citing Elyria Joint Venture v. Boardwalk Fries, Inc., 9th Dist. Lorain No. 99CA007336, 2001 WL 10852, *3, and quoting Cardone v. Cardone, 9th Dist. Summit No. 18349, 1998 WL 224934, *8. Therefore, Mr. Coleman's assignment of error is overruled.

*Coleman*, 2020 WL 2188847, at *4. Ohio Rule of Appellate Procedure 16(A)(7), on which the appellate court relied, requires an appellant to:

> include in its brief … An argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies.

The Ohio court of appeals thus enforced a state procedural rule and rejected Coleman's claim solely on the basis of Coleman's failure to comply with the rule.[5] Because this is the "last state court disposition providing reasons for its decision," *McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991), it is the

---

[5] The Warden relied on the court of appeals' holding. *See* Doc. 19, at 25; Doc. 103, at 3 (relying on arguments presented in response to Coleman's first petition).

13

decision to which this Court must look to determine whether Ohio's courts enforced the procedural bar, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).

A number of courts have held that Ohio Appellate Rule 16(A)(7) is an adequate and independent basis on which a state may rely to foreclose habeas relief. *See Hayes v. LaRose*, No. 5:14-cv-2461, 2016 WL 1599807, at *6 (N.D. Ohio Jan 27, 2016) ("Courts in both this district and the Southern District of Ohio have found Ohio Appellate Rule 16(A)(7) an adequate and independent state rule upon which the state may foreclose federal habeas review.") (collecting cases), *report and recommendation adopted by* 2016 WL 1558764 (N.D. Ohio Apr. 18, 2016); *see also Jennings v. Harris*, No. 1:19-cv-01678, 2022 WL 3142888, at *19 (N.D. Ohio July 6, 2022), *report and recommendation adopted*, 2022 WL 3151187 (N.D. Ohio Aug. 5, 2022). I agree; the rule "does not rely on federal law," and, as the court of appeals' citations show, it "is firmly established and regularly followed." *Smith*, 2022 WL 13892512, at *2.

A habeas court, however, can "consider the merits of procedurally defaulted claims" if "the petitioner demonstrates cause for the default and prejudice resulting therefrom, or that failing to review the claim would result in a fundamental miscarriage of justice." *Williams*, 460 F.3d at 805–06. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve [a] claim for review in state court will suffice" to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). But that ineffectiveness claim "must 'be

presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.'" *Id.* at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 489 (1986)); *see Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005) ("To constitute cause, that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted.").

Here, Coleman suggests that he can show cause and prejudice sufficient to excuse his procedural default. In his amended petition, he references Document 75, labeled "notice of cause and prejudice," which he has serially supplemented. *See* Doc. 95, at 5; Docs. 75, 99, 108-1, 119, 132, 142. As it relates to Coleman's speedy trial claim, he suggests in his notice that his appellate counsel filed Coleman's appellate brief without consulting Coleman. Doc. 75, at 2. Coleman also notes that he raised ineffective assistance of his appellate counsel in his petition to reopen his appeal. *Id.*

The problem, however, is that although Coleman raised an ineffective-assistance claim in his application to reopen his appeal based on counsel's alleged briefing deficiency related to the speedy trial issue, *see* Doc. 19-1, 198–99, he failed to appeal to the Ohio Supreme Court the denial of his petition.[6]

---

[6]    Coleman says that he mailed an appeal to the Ohio Supreme Court before his deadline expired but that the appeal arrived after the deadline and was thus rejected. Doc. 75, at 5. Because Ohio has not adopted an analogue to the federal prison-mailbox rule and isn't required to adopt such a rule, *see Hall v. Warden, Lebanon Corr. Inst.*, 662 F.3d 745, 753 (6th Cir. 2011), Coleman's explanation simply confirms that he failed to appeal the denial of his application to reopen.

So he has procedurally defaulted the ineffective assistance claim on which he relies to show cause. *See Williams*, 460 F.3d at 806; *English v. Banks*, No. 1:11-cv-675, 2012 WL 3070742, at *15 (S.D. Ohio July 30, 2012) ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default") (citing *O'Sullivan*, 526 U.S. at 848). As such, Coleman cannot establish cause. *See Edwards*, 529 U.S. at 453. And Coleman's failure to establish cause to excuse his default eliminates the need to consider prejudice. *See Murray*, 477 U.S. at 494.

Further, even if Coleman had shown cause, he could not show prejudice. To succeed on his speedy trial claim, Coleman must show that the Ohio court of appeals' finding that his rights were not violated is contrary to, or represents an unreasonable application of, clearly established Supreme Court precedent or that it was based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2); *Brown v. Bobby*, 656 F.3d 325, 329 (6th Cir. 2011). But Coleman doesn't say anything about the appellate court's decision. *See* Doc. 93, at 5. So he's failed to carry his burden.

But even if he had, he couldn't prevail on the merits. For starters, the state appellate court's factual determination, which Coleman doesn't challenge, is presumed to be correct. 28 U.S.C. § 2254(e)(1). And those findings, which show that Coleman was largely responsible for much of the delay in his case, are fatal to any effort to show prejudice. The court explained that:

> {¶10} Mr. Coleman did not clarify in his merit brief
> when, or even if, he made a motion to the trial court,

16

pursuant to R.C. 2945.73(B), for the offense to be discharged. See App.R. 16(A)(6). Per this Court's review, it appears that Mr. Coleman did not file such a motion. However, on August 20, 2018, the State filed a brief in opposition to Mr. Coleman's pro se motion to dismiss. The State's filing indicates that Mr. Coleman filed the motion in a separate case pending against Mr. Coleman in the Summit County Court of Common Pleas: Case No. CR-2017-03-0983(B). Mr. Coleman did not file that motion in the case underlying this appeal—CR-2018-01-0287—and the motion is not in the record before this Court. Nonetheless, the State construed the motion as a challenge to speedy trial violations in the present matter and responded accordingly.

{¶11} In its response in opposition, the State explained that Mr. Coleman was arrested in the present matter on January 26, 2018, and later indicted by a grand jury on those charges. The State discussed the motions made by Mr. Coleman, including a request for new appointed counsel, a motion to sever, and multiple motions to continue. The State indicated that, on January 20, 2018, the Stow Municipal Court sentenced Mr. Coleman to serve 70 days in the Summit County Jail on a case from that court. In calculating the speedy trial time frames relevant to this case, the State concluded that there were no days were Mr. Coleman was held in jail solely on the charges of burglary: Mr. Coleman "was also being held either on the capias and bond from [CR-2017-03-0983(B)] or on the sentence from Stow Municipal Court in case number 18CRB00292." The State averred that 81 days had passed toward the 270-day speedy trial clock and, therefore, requested that Mr. Coleman's motion to dismiss be denied.

{¶12} The trial court held a hearing on the motion to dismiss on August 23, 2018. Although Mr. Coleman was represented by counsel during the hearing, counsel clarified that Mr. Coleman filed the motion to dismiss pro se and counsel had nothing to add on the issue. The now-retired trial judge presiding over

17

the case at that time provided Mr. Coleman with an explanation of the reasons his motion to dismiss lacked merit. The trial court explained to Mr. Coleman the significance of the other case Mr. Coleman had pending, noted Mr. Coleman's nine separate motions to continue, discussed Mr. Coleman's failure to appear for a court date which resulted in the issuance of an arrest warrant, and reminded Mr. Coleman that he was warned of the significant delay that would occur if the trial court granted his prior request for new appointed counsel. The trial court also noted that, during the pendency of the present case, Mr. Coleman had served time on a different case from the Stow Municipal Court. The trial court then concluded its remarks with the following statement:

> So, Mr. Coleman, I can't remember the last time I had a case with a motion to dismiss on speedy trial grounds that has less merit than yours. Yours has no merit. We're not even close to the speedy trial law expiring. And for all those reasons, I'm going to deny your motion.

{¶13} Thereafter, Mr. Coleman expressed his disagreement with the State's position and the trial court's ruling. Mr. Coleman again requested that appointed counsel be removed and new counsel appointed. Following the hearing, trial court issued an order purporting to overrule Mr. Coleman's pro se motion to dismiss, granting Mr. Coleman's request to appoint new counsel, and setting the matter for a status conference on August 29, 2018.

{¶14} Newly appointed counsel appeared on Mr. Coleman's behalf and moved to continue the status conference to September 12, 2018. The trial court subsequently granted Mr. Coleman's motion for a continuance of the September status conference to October 3, 2018. At the October status conference, the trial court granted Mr. Coleman's request to set a suppression hearing and scheduled it for November 2, 2018. Mr. Coleman then withdrew his

18

motion to suppress and the trial was set for January 24, 2019, with a pretrial hearing set for November 28, 2018. Per Mr. Coleman's request, the hearing date was continued to December 21, 2018. At the December 21, 2018 hearing, Mr. Coleman expressed his desire to waive his right to counsel and proceed pro se. The trial court appointed new standby counsel, granted his request, and permitted Mr. Coleman to represent himself. At Mr. Coleman's request, the trial court vacated the January 24, 2019 trial date and set the matter for a status conference on January 9, 2019. At this point, the case was transferred from the original trial judge to the newly-elected judge.

{¶15} During the January 9, 2019 status conference, Mr. Coleman informed the trial court that he no longer wished to proceed pro se. Consequently, the trial court appointed the previously appointed standby counsel to represent Mr. Coleman and, per his request, continued the status conference to January 23, 2019. Per Mr. Coleman's request, the status conference was continued to February 6, 2019. At the February 6, 2019 status conference, counsel for Mr. Coleman explained to the trial court that she had not yet filed a motion to dismiss on speedy trial grounds. However, referencing the trial court's directive to counsel and the State "to get together and informally resolve the [calculation of time]," counsel indicated that she wanted to put a motion on the record. The State noted that, as of August 20, 2018, 81 days had passed toward the speedy trial time, briefly recounted the procedural history of the case since August, and indicated that they were "within the 270 days."

{¶16} The trial court acknowledged that Mr. Coleman disagreed with the calculation but stated "[w]e're going to trial, and the calculation of time will become an appellate counsel [sic]." Mr. Coleman protested that he wanted to "get a time count from the courts[,]" because he did not "want time from the State." The State explained that if Mr. Coleman would file a motion indicating why he believes "the

speedy trial time has lapsed[,]" the State would respond with an analysis and calculation of time for the court to consider. The trial court indicated that it wanted to consider the calculation of time from the State, and counsel for Mr. Coleman stated that she would submit his argument in writing.

{¶17} The status conference continued the following day, February 7, 2019. Mr. Coleman raised issues to the trial court regarding his ability to review of evidence and obtain an expert witness. At that point, counsel for Mr. Coleman explained to the trial court that she and her client had "focused exclusively on the speedy trial issue." Mr. Coleman again requested that he be permitted to represent himself. The trial court was inclined to grant his request to proceed pro se, but then the discussion circled back to the speedy trial issues. The trial court clarified that, despite any prior insinuation that the speedy trial issue would be an issue for appeal, the trial court was willing to consider a new motion. The trial court stated, "No, I'm not prejudging anything. You need to protect the record by doing whatever it is that you think are issues in this case. If you think that this is a legitimate issue, then there needs to be a motion filed to protect you on this issue."

{¶18} Mr. Coleman informed the trial court that he wished to file a new motion on the speedy trial issue and again insisted that he be provided with a "correct time count" and inquired as to who would get the "time count" for him. Once it became apparent to Mr. Coleman that, if he chose to represent himself, he would need to come up with his own calculation of time and submit a motion, he changed his mind and informed the court that he wished for his appointed counsel to continue to represent him. The trial court set a trial date of February 28, 2019, which, per request of counsel for Mr. Coleman, was continued one final time to March 5, 2019. The record reflects that Mr. Coleman did not file the anticipated motion or brief regarding the speedy trial. The matter proceeded to trial and Mr. Coleman was convicted on both counts of burglary.

*Coleman*, 2020 WL 2188847, at *2–4.

The court of appeals' undisputed factual determination shows that assuming Coleman filed a speedy trial motion—none was evident in the record—he filed it in a different case, approximately seven months after he was arrested. And from there, Coleman was responsible for most of the delay in his case. In this circumstance, vindicating a Sixth Amendment speedy trial claim would have been difficult, at best. *See United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011).[7]

Coleman procedurally defaulted his speedy trial claim and has not shown cause and prejudice sufficient to excuse his default.

Finally, Coleman has not shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of

---

[7]    In *Young*, the Court observed:

> the record shows that Young himself caused most of the delay. In addition to the motions practice discussed above, Young twice requested a continuance, acquiesced to the continuances sought by other parties, and when the government made its only request for a continuance, agreed with that continuance and asked for additional time. In *Barker* [*v. Wingo*, 407 U.S. 514, 532 (1972)], the Supreme Court emphasized that "failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial."

657 F.3d at 415.

actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The closest Coleman comes to meeting this standard is in his fourth ground, which is based on what he alleges are violations of *Brady v. Maryland*, 373 U.S. 83 (1963). But as is discussed below, Coleman's fourth ground involves neither an actual *Brady* violation nor new evidence.

### 2. Coleman's sufficiency challenge

If a habeas petitioner "fail[s] to fairly present federal claims to the state courts, and a state procedural rule now prohibits the state court from considering them, the claims are considered procedurally defaulted." *Pudelski v. Wilson*, 576 F.3d 595, 605 (6th Cir. 2009). Although a petitioner in that situation might have "technically satisfied" "the exhaustion requirement[,] … the petitioner's failure to have the federal claims considered in the state courts results in a procedural default of those claims that bars federal court review." *Id*.; *see Seymour v. Walker*, 224 F.3d 542, 549–50 (6th Cir. 2000) ("When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to the petitioner's failure to raise that claim before the state courts while state-court remedies are still available or due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim,

that claim is procedurally defaulted and may not be considered by the federal court on habeas review.").

"In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal." *Williams*, 460 F.3d at 806; *see Gerth v. Warden, Allen Oakwood Corr. Inst.*, 938 F.3d 821, 830 (6th Cir. 2019) (explaining that Ohio courts enforce res judicata). As a result, "if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised on direct appeal, the claim is procedurally defaulted." *Williams*, 460 F.3d at 806; *see Hicks v. Collins*, 384 F.3d 204, 211 (6th Cir. 2004).

Coleman's second ground for relief, that the State presented insufficient evidence to prove his guilt, is new. Doc. 93, at 7. He neither raised it in in his initial appeal nor in any other manner. It is true that in his pro se application to reopen his direct appeal, Coleman asserted that "[t]he trial court erred in denying [his] motion for acquittal when the State failed to present sufficient evidence of burglary." Doc. 19-1, at 189. But he made this claim in the context of his ineffective-assistance-based petition to reopen his appeal. *Id*. Indeed, the court of appeals disposed of Coleman's argument by finding that Coleman hadn't shown that appellate counsel was ineffective. *Id*. at 206. So Coleman has never presented his sufficiency-of-the-evidence claim to any Ohio court. And, in any event, Coleman didn't appeal to the Ohio Supreme Court the court of appeals' decision denying application to reopen his appeal. Further, Ohio's

res judicata rule would bar Coleman from raising the argument now. As a result, this claim is procedurally defaulted.

As to cause and prejudice to excuse his default, Coleman again suggests in his notice of cause and prejudice that he raised ineffective assistance of his appellate counsel in his petition to reopen his appeal. Doc. 75, at 2. But he doesn't explain why his counsel would have been ineffective for omitting a seldom-successful insufficient-evidence argument. *Cf. United States v. Zambrano*, 776 F.2d 1091, 1094 (2d Cir. 1985) ("A defendant who challenges the sufficiency of the evidence is seldom successful[.]"). And he also fails to explain how the omission of this argument prejudiced him. Further, as noted, Coleman procedurally defaulted his ineffective assistance claim when he failed to appeal to the Ohio Supreme Court the denial of his application to reopen. So he cannot show cause or prejudice to excuse his procedural default.

### 3. *Coleman's ineffective assistance ground*

In his third ground, Coleman claims that his (1) trial counsel was ineffective in that he (a) "allow[ed] the State and State trial court to violate … Coleman's speedy trial right," (b) "withdrew … Coleman's suppression" motion, and (c) "allowed an edited video and an inconsistent statement to be used at trial," and (2) appellate counsel was ineffective in that he failed to (a) fully "articulate" how Coleman's speedy trial rights were violated, (b) "submit important transcripts, and (c) argue "insufficient evidence" or "ineffective assistance of counsel." Doc. 93, at 8.

Although Coleman was represented in his direct appeal by new counsel, *compare* Doc. 19-1, at 67, *with id.* at 71, he did not raise ineffective assistance of trial counsel before the Ohio appellate court in his initial appeal. And while he raised ineffective assistance of his trial counsel in his petition to reopen his appeal, he did so in the context of the assertion that his *appellate* counsel was ineffective. So he's never presented to Ohio's courts an argument that his trial counsel was ineffective. And even if the argument in Coleman's petition to reopen his appeal raised the issue, Coleman didn't appeal to the Ohio Supreme Court the court of appeals' decision denying his petition. Coleman has thus procedurally defaulted any claim that his trial counsel was ineffective. *See Hicks*, 384 F.3d at 211; *Monzo v. Edwards*, 281 F.3d 568, 576–77 (6th Cir. 2002) ("It is … settled that res judicata applies when a defendant who is represented by new counsel on direct appeal fails to raise the issue of ineffective assistance of trial counsel, and the issue could fairly have been determined without resort to evidence outside the record."); *English*, 2012 WL 3070742, at *15 ("Failure to present an issue to the state supreme court on discretionary review constitutes procedural default").

As with his first and second grounds, Coleman can't show cause or prejudice. He's procedurally defaulted his claim of ineffective assistance of trial counsel and he makes no effort to show prejudice.

As to the appellate-counsel aspect of Coleman's third ground, Coleman raised ineffective assistance of appellate counsel in his application to reopen

his appeal. *See* Doc. 19-1, at 193–200. But, again, Coleman failed to appeal the court of appeals' decision to the Ohio Supreme Court. So he's procedurally defaulted the claim. And because he makes little effort to show cause[8] and no effort to show prejudice as to this default, *see* Doc. 93, at 8–9, *see also* Docs. 75, 99, 108-1, 119, 132, 142, Coleman's claim that his appellate counsel was ineffective should be rejected.

To be sure, however, even if Coleman had not procedurally defaulted his ineffective assistance claims, they should be dismissed. When the previously assigned magistrate judge afforded Coleman additional time to submit his amended petition, she warned Coleman that his amended petition "must include a statement of facts in support of each of the seven grounds for relief." Doc. 58, at 6.  She warned him that his failure to heed her warning and to comply with the pleading requirements in Habeas Rule 2 could result in the summary denial of "one or more" of his grounds for relief. *Id*.

Despite this warning, Coleman simply presents a series of conclusory assertions, Doc. 93, at 8, accompanied by a timeline of the things that his trial and appellate counsel did or failed to do, Doc. 93-2. But he doesn't explain what was deficient about either attorney's performance.[9] And aside from baldly

---

[8]    As noted, Coleman confessed that he failed to appeal the denial of his application to reopen. Doc. 75, at 5; *see also* Doc. 99, at 7–8. And that confession means that he cannot show cause. Doc. 75, at 5.

[9]    The closest Coleman comes to asserting deficient performance is his assertion that his appellate "counsel failed to submit transcripts supporting his" speedy trial argument. Doc. 93-2, at 3. If the court of appeals had ruled

stating that he "experienced prejudice throughout all proceedings," Doc. 93-2 at 4, he presents nothing to suggest that he suffered prejudice. So there is no basis to conclude that either of his counsel were ineffective. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984) (explaining that an ineffective-assistance claim must rest on a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and prejudice).

Assuming Coleman has not procedurally defaulted his ineffective assistance claims, his failure to specifically explain how either counsel failed to fulfill their obligations should result in the dismissal of this ground for relief. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) ("Pineda's vague references to his sixth amendment rights are insufficient to raise the issue."); *Zettlemoyer v. Fulcomer*, 923 F.2d 284, 298 (3d Cir. 1991) ("vague and conclusory allegations" are insufficient "to show that counsel made errors so serious that his representation fell below an objective standard of reasonableness").

---

based on omitted transcripts, this might support a showing of deficient performance. But, as the court of appeals noted in denying Coleman's application to reopen his appeal, it hadn't ruled based on omitted transcripts. Doc. 19-1, at 208. Further, the court noted that Coleman's argument was factually baseless because the trial court granted counsel's request for "a transcript including all in-court proceedings from an arraignment through sentencing." *Id.* at 208–09. Coleman, however, ignores the court of appeals' ruling.

### 4. Coleman's Brady claim

This leaves Coleman's fourth ground, which he says involves a *Brady* violation. Understanding what's wrong with this ground for relief takes some unpacking. Let's start with what *Brady* requires.

Under *Brady v. Maryland*, the prosecution "must disclose evidence '*in its possession* that is both favorable to the accused and material to guilt or punishment.'" *United States v. Fields*, 763 F.3d 443, 458 (6th Cir. 2014) (emphasis added) (quoting *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987)). To show a Brady violation, "a defendant must show [that]: '[1] the prosecutor suppressed evidence; [2] … such evidence was favorable to the defense; and [3] … the suppressed evidence was material.'" *Id*. (quoting *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000)); *see Strickler v. Greene*, 527 U.S. 263, 281–82 (1999). Evidence is not material unless "there is 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Fields*, 763 F.3d at 458  (quoting *Ritchie*, 480 U.S. at 57); *see Strickler*, 527 U.S. at 281 ("strictly speaking, there is never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a different verdict").

A valid *Brady* claim requires a showing of prejudice caused "by the delay in disclosure." *Fields*, 763 F.3d at 458. As a result, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete

failure to disclose." *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 2002). In other words, "so long as the defendant is given impeachment material, even exculpatory impeachment material, in time for use at trial," *Brady* is not violated. *United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988). Showing prejudice requires a defendant to demonstrate "what he would have done differently had he been given more time to address the *Brady* evidence, and specifically how, had the evidence been given to the defendant earlier, a reasonable probability exists that the result of the defendant's trial would have been different." *Fields*, 763 F.3d at 459 (quoting *United States v. Spry*, 238 F. App'x. 142, 148 (6th Cir. 2007)). Ultimately, the question is "'whether in [the] absence [of the evidence] [the defendant] received a fair trial, understood as a trial resulting in a verdict worthy of confidence.'" *Id.* (quoting *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)).

This brings us to what Coleman claims are two *Brady* violations. The first concerns police testimony about a video. In his amended petition, Coleman alleges that during his trial, Akron police officers Robert Patrick and Russell Bassett "testified about a portion of the edited video that they alleged[ly]" saw but that "was not provided to … Coleman [or] the jury." Doc. 93, at 10. Coleman has elaborated on his claim in a slow-drip process in which, without leave of Court, he has serially added to his explanation about the nature of what he's alleged. *See* Doc. 75, 99, 108-1, 119, 142. Thus, in a filing submitted after his amended petition, he stated that:

29

> during the trial the State's witness Detective Bassett stated that Exhibit 5 the edited video never displayed to act of burglary, he testified about a second portion of Exhibit 5 that allegedly showed the act of Burglary being committed, which Mr. Coleman nor the members of the jury were able to see.

Doc. 99, at 5.[10]

In another filing, Coleman asserted that Detective Bassett "testified that the second portion of State's Exhibit 5 … was missing," and that Bassett "claimed" that the missing portion "showed the Acts of Burglary being committed." Doc. 119, at 2. According to Coleman, Bassett testified "that he had not received the full video surveillance footage from Gracie Springer[,] the landlord." *Id*. And Bassett testified that the video "was downloaded outside of [his] presen[ce]." *Id*. Coleman then asserted that "[t]he introduction of the edited video prejudice[d] [him], denying him a fair trial because the jury was [un]able to see the second portion of the video surveillance displaying what actually happened on July 27, 2017." *Id*.; *see also* Doc. 108-1, at 1.

Coleman attached several trial transcript pages to Doc. 119. *See* Docs. 119-1, 119-2. These pages concern the referenced portion of Bassett's testimony. They show that Bassett testified that in late July 2017, he

---

[10]    Coleman lobs a number of other accusations in other documents. *See*, *e.g.*, Doc. 99, at 5 ("the prosecution maliciously lied on the record that it was a CODIS hit that brought the authorities to Mr. Coleman"); Doc. 108-1, at 2–4. Coleman has not, however, sought leave to amend his petition again. So I'm only considering Coleman's additional accusations to the extent they shed light on the claims in his amended petition. *See* Docs. 75, 99, 108-1, 119, 142.

30

investigated a burglary in Akron. Doc. 119-1. He explained that after learning that there was video evidence of the burglary, he met with Gracie Springer, who was the landlord of the property in question. *Id*. According to Bassett, because Springer had previously installed "a video camera … in the upstairs apartment," he was able to "review[] a video of what happened" there on July 27, 2017. *Id*.

Bassett testified that the video showed a man "kicking in the door several times, prior to entry." Doc. 119-1. Bassett did not immediately obtain a copy of the video from Springer. Doc. 119-2. Later that day, however, she downloaded a copy of the video and called Bassett. *Id*. Bassett and a Detective Frost returned to Springer's location during the afternoon of the day that Bassett first viewed the video. *Id*. At that point, Frost copied to a thumb drive or disk the file Springer had downloaded. *Id*. Later, Bassett discovered that the file Frost had copied from Springer did not contain a complete copy of the video. *Id*. By the point he realized that part of the video was missing, however, the original surveillance footage was no longer available because Springer's video storage "recycle[d] every 30 days." *Id*. As a result, although the prosecution played a video obtained from Springer, which showed a man standing on a porch and then leaving, that video did not show what Bassett observed—a man "kicking in the door several times, prior to entry." Docs. 119-1, Doc. 119-2.

Bassett further explained that Springer displayed on her Facebook account images of the man on the porch. Doc. 119-2. This led to an anonymous tip that led Bassett to Coleman. *Id*.

Coleman's second alleged *Brady* claim is that "[t]he State withheld the statement by witness Tanisha Bowen['s] son's father that made … Coleman a suspect in count 2 Burglary not a CODIS hit." Doc. 93, at 10. Coleman later elaborated that in late September 2017, two months after the burglary, "a lady named T. Bowen" filed a police report in which she said:

> That when she pulled up to her home she saw someone behind her house and once they came in eye contact the person ran. She stated that nothing was missing from her home; but all her doors were opened. The Akron Police state in the report that the crime scene unit was called to collect a speck of blood on the outside window frame; which was sent to B.C.I.
>
> . . .
>
> On November 23, 2017; T. Bowen and her son's father went to the Akron Police Department and made another statement stating that an ashtray and a cell phone was missing from her home the night the alleged Burglary occurred; and that I was the one that broke into her home.
>
> . . .
>
> The State's witness T. Bowen testified … that the night she made the police report she claimed nothing was missing; but two months later she made another statement claiming that an ashtray and a cell phone was missing from her home.

Tr. 108-1, at 1, 3; *see* Doc. 99, at 5 ("The State's witness T. Bowen admitted while on the stand that the night she made the police report she reported nothing was missing from her home, but two months later she made another statement claiming that some items were missing from her home.").

Having explained what *Brady* requires and what Coleman alleges, it is apparent that whatever error Coleman is asserting, he has not asserted a *Brady* claim; he hasn't shown that the State suppressed anything.

Take the testimony about the video. Bassett's testimony, *which Coleman submitted*, shows the State never possessed the full, unedited version of video. And the State didn't hide the fact that it couldn't supply the original video; Bassett testified about it.

Further, Coleman's issue with Bowen's testimony isn't that the State suppressed her statement. Rather, it's that she told the police two different things. But according to Coleman's own version of events, Bowen admitted on the stand that she told two different versions of events.

In short, Coleman hasn't presented a *Brady* claim. At best, he has raised a sort of evidentiary challenge. But whatever the nature of Coleman's claim, it is clear that he never presented it to any Ohio court. Like his other grounds, Coleman has procedurally defaulted this ground. *See Williams*, 460 F.3d at 806.

Further, Coleman cannot show cause for his default. He's never argued that any of his counsel were deficient for failing to raise his *Brady* claim.

Moreover, "[c]ause is shown when the factual basis of the claim was 'reasonably unknown' to the defendant's counsel." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002) (quoting *Amadeo v. Zant*, 486 U.S. 214, 222 (1988)). But Coleman knew the basis of his claim when Bassett and Bowen testified. The claim was not "reasonably unknown"; it was completely known at trial.

Coleman, however, asserts "that 'showing an actual *Brady* violation is itself sufficient to show cause and prejudice.'" Doc. 142, at 4 (quoting *Jones v. Bagley*, 696 F.3d 475, 486–87 (6th Cir. 2012)). Coleman hasn't shown an actual *Brady* violation, however. And even if he had, he ignores the fact that a *Brady* violation only constitutes cause if "the reason for his failure to develop" his claim "in state-court proceedings was the State's suppression of the relevant evidence." *Banks v. Dretke*, 540 U.S. 668, 691 (2004). In other words, a habeas petitioner can't be faulted for failing to develop a claim that the State hid from him. But the State didn't hide the basis for Coleman's claim. Indeed, Coleman's basis for his claim is testimony that the State presented *at trial*.

Because Coleman has procedurally defaulted all of his claims, the Court should dismiss Coleman's petition.[11]

---

[11]     Coleman's pending motions, Docs. 149, 151, 157, 159, 161, are denied. Coleman's motion to expand the record, Doc. 149, is simply a recapitulation of his claims and doesn't specify the material he seeks to add to the record. His motion for leave to conduct depositions, Doc. 151, is not supported by the requisite good cause. *See Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001) ("A district court has discretion to grant discovery in a habeas case upon a fact specific showing of good cause under Rule 6.") (citing Bracy, 520 U.S. 899); *see also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) ("Rule 6 does not

## Conclusion

For the reasons set forth above, I recommend that Coleman's petition be dismissed.

Dated: July 14, 2023

/s/ James E. Grimes Jr.
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019).

---

sanction fishing expeditions based on a petitioner's conclusory allegations."). Coleman has provided no basis in Doc. 157 for the Court to appoint a forensic expert to compare certain matters. Coleman's latest motion to expand the record, Doc. 159, purportedly relates to a "showing of cause and prejudice" based on ineffective assistance of appellate counsel. But Coleman defaulted any claim related to ineffective assistance of appellate counsel.

In Doc. 161, Coleman asks for an "emergency court docket" because, as of eight days after it was issued, he had not yet received an order the Court had issued in June. Doc. 161 is denied without prejudice.

35